**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

JOHN LIGHT, Individually and on Behalf of
All Others Similarly Situated,

        Plaintiff,

    v.

THE HONORABLE COLLEEN C. DAVIS,
State Treasurer of the State of Delaware, and
BRENDA MAYRACK, ESQUIRE, State
Escheator and Director, Office of Unclaimed
Property,

        Defendants.

Civil Action No. 25-705-RGA

<u>MEMORANDUM OPINION</u>

Mark C. Rifkin, WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP, New York, NY;
Arthur Susman, LAW OFFICE OF ARTHUR SUSMAN, Chicago IL; Theodore A. Kittila,
HALLORAN FARKAS + KITTILA LLP, Wilmington, DE,

    Attorneys for Plaintiff.

Arthur G. Connolly, III; Max B. Walton; Christina M. Thompson; Lisa R. Hatfield,
CONNOLLY GALLAGHER LLP, Wilmington, DE,

    Attorneys for Defendants.

March 18, 2026



ANDREWS, U.S. DISTRICT JUDGE:

Before me is Defendants' motion to dismiss. (D.I. 7). I have considered the parties' briefing. (D.I. 8, 12, 14, 15, 19, 21, 22, 23 24). For the reasons set forth below, this motion is granted. Dismissal will be without prejudice.

## I.    BACKGROUND

Plaintiff brings suit against Defendants Colleen C. Davis, State Treasurer of Delaware, and Brenda Mayrack, Esq., the State Escheator and Director of the Office of Unclaimed Property in the Delaware Department of Finance, in their official capacities. (D.I. 1 at ¶¶ 12-13, 15). Plaintiff, a citizen and resident of Delaware, challenges the constitutionality of the Delaware Unclaimed Property statute, 12 *Del. C.* § 1130, *et seq.* ("DUPL") under the Fifth and Fourteenth Amendments of the United States Constitution and under Article I, Section 8 of the Delaware Constitution. (*Id.* at ¶¶ 1, 11). Under the DUPL, property in the state "is 'presumed abandoned'[1] if the owner . . . has not communicated in writing with the holder concerning the property or has not otherwise given an indication of interest in the property within . . . generally five years. Property that is 'presumed abandoned' [is] delivered to the State Escheator's custody." (*Id.* at ¶ 19). "[T]he State Escheator is required to turn over all unclaimed property to the State's General Fund. Unclaimed property in the State's General Fund is invested, and thus earns interest, dividends, accruals, earnings, investment returns, and other benefits[.]" (*Id.* at ¶ 34).

An individual claiming a property interest in "unclaimed property paid or delivered to the State Escheator may file a claim with the State Escheator for return of the property or for the proceeds from the sale of the property." (D.I. 1 at ¶ 37). The owner of the unclaimed property is

---

[1] Plaintiff notes, "Property subject to the [DUPL] is referred to interchangeably herein as 'abandoned property' or 'unclaimed property.'" (D.I. 1 at ¶ 19). In my recitation of the facts, I will follow Plaintiff's terminology as he uses it.

2

generally not "entitled to receive interest on account of such property," although a person "entitled to unclaimed dividend- or interest-bearing securities prior to its conversion to cash is entitled to any dividends or interest that accrues up to the time the claim is paid." (*Id.* at ¶¶ 38, 40).

Plaintiff states that the State Escheator held Plaintiff's property in its custody; Plaintiff states that his property was worth "over $50.00 [as] reported by Office Depot Inc." (*Id.* at ¶ 52). Plaintiff filed a claim on or about December 18, 2024 for return of his property and received notice on December 19, 2024 that his claim had been approved. (*Id.* at ¶¶ 53-54). Plaintiff received a check, dated December 19, 2024, of $135, which Plaintiff states "represented the entire principal amount of Plaintiff's unclaimed property in Delaware's possession." (*Id.* at ¶ 56).

Plaintiff claims that the DUPL "effectively provides . . . the State with an interest-free loan of unclaimed private property funds." (*Id.* at ¶ 41). Plaintiff therefore received "no payment of just compensation for the entire time during which his private property was held in the State General Fund and used for public purposes." (*Id.* at ¶ 57). Plaintiff states that he should have been "entitled to receive back from the State [this] so-called 'time value' of [his] property . . . or the rate or yield that the State pays for borrowing funds on the open market or from third parties." (*Id.* at ¶ 45). Plaintiff seeks declaratory and prospective injunctive relief on the grounds that the DUPL violates the Fifth and Fourteen Amendments of the U.S. Constitution and declaratory and injunctive relief on the grounds that the DUPL violates Article I, Section 8 of the Delaware Constitution. (*Id.* at ¶¶ 71-80). Among other forms of relief, Plaintiff specifically requests that I issue an injunction "compelling Defendants to pay just compensation to the owners of the property." (*Id.* at ¶ D).

3

This is the parties' second appearance before this court. In *Light v. Davis*, 694 F. Supp. 3d 541 (D. Del. 2023), this court dismissed Plaintiff's complaint with prejudice as unripe and for failure to state a claim. *Id.* at 547-48, 561. The Third Circuit affirmed in part, noting that because Plaintiff's "claims [were] not ripe, the District Court lacked Article III jurisdiction to consider whether the complaint failed to state a claim. Accordingly, we will vacate the District Court's order to the extent it dismissed the complaint with prejudice for failure to state a claim and remand with instructions to the District Court to dismiss the case without prejudice." *Light v. Davis*, 2024 WL 4144066, at *2 (3d Cir. Sept. 11, 2024).

Defendants now move for dismissal under Rules 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. (D.I. 7 at 1).

## II.    LEGAL STANDARD

Because I dismiss this case for lack of subject matter jurisdiction,[2] I do not determine whether Plaintiff has stated a claim under Rule 12(b)(6). Therefore, I recite here only the standard under Rule 12(b)(1).

"Under [Rule] 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. . . . In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack. In reviewing a facial challenge, which contests the sufficiency of the pleadings, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (cleaned up). "A factual attack, on the other hand, is an argument that

---

[2] "[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n. 2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)).

there is no subject matter jurisdiction because the facts of the case—and here the District Court may look beyond the pleadings to ascertain the facts—do not support the asserted jurisdiction." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

Although Defendants' opening brief lays out the standard for a factual attack on subject matter jurisdiction (D.I. 8 at 6), Defendants do not distinguish whether they are seeking to mount a facial or factual attack against Plaintiff's complaint. Ultimately, as the result would be the same in either case, I will proceed as though this were a facial attack. I will take the allegations in Plaintiff's complaint in the light most favorable to Plaintiff.

## III.    DISCUSSION

Plaintiff broadly appears to seek two forms of relief. One form of relief sought appears to be retroactive: Plaintiff requests that I issue an injunction "compelling Defendants to pay just compensation to the owners of the property." (D.I. 1 at ¶ D). The other forms of relief sought are prospective: for example, Plaintiff asks me to issue a declaration that the DUPL is unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution and under Article I, Section 8 of the Delaware Constitution and issue a declaration that "Defendants' acquisition of custody of unclaimed property under the [DUPL] and the State's use of unclaimed property . . . are takings of property within the meaning of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 8 of the Delaware Constitution." (*See generally id.* at ¶¶ B-C, E-F).

The Eleventh Amendment bars me from issuing the retroactive relief Plaintiff seeks, and standing doctrine bars me from issuing the prospective relief Plaintiff seeks.

5

## A. Retroactive Relief

The Eleventh Amendment reads, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court held in *Hans v. Louisiana*, 134 U.S. 1, 15-19 (1890), that a nonconsenting state is also immune, under the Eleventh Amendment, from suits brought by its own citizens in federal court.

The Supreme Court in *Ex parte Young*, 209 U.S. 123, 159-64 (1908) held that when a state official acts under an unconstitutional state statute, federal courts are not barred by the Eleventh Amendment from issuing an injunction preventing that state official carrying out his or her duties pursuant to the unconstitutional statute.

The Supreme Court later noted that "the relief awarded in *Ex parte Young* was prospective only; the Attorney General of Minnesota was enjoined to conform his future conduct of that office to the requirement of the Fourteenth Amendment." *Edelman v. Jordan*, 415 U.S. 651, 664 (1974). An injunction against a state official would run afoul of the Eleventh Amendment when "[i]t requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation." *Id.* at 668. Even when one might attempt to describe a "retroactive award of monetary relief as a form of 'equitable restitution,' it is in practical effect indistinguishable in many aspects from an award of damages against the State," because "[i]t will to a virtual certainty be paid from state funds . . . [and] is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Id.*

6

As I noted earlier, Plaintiff received a check of $135, which "represented the entire principal amount of Plaintiff's unclaimed property in Delaware's possession." (D.I. 1 at ¶ 56). Plaintiff now seeks further relief "compelling Defendants to pay just compensation to the owners of the property." (*Id.* at ¶ D). I issued an oral order (D.I. 20) asking Plaintiff why the relief Plaintiff sought would not have been barred by the Eleventh Amendment under the *Edelman* ruling. Plaintiff responded. (D.I. 22). As I will explain below, I do not find Plaintiff's response convincing.

Plaintiff claims, "*Edelman* does not apply here because [Plaintiff] does not seek to invoke the [*Ex parte*] *Young* exception to protect his claims from Eleventh Amendment immunity." (D.I. 22 at 1). This strikes me as an odd claim. If indeed Plaintiff did not seek to invoke *Ex parte Young*, why does Plaintiff style his requested relief against Delaware state officials in the form of "declaratory and prospective injunctive relief"? (D.I. 1 at ¶¶ 71-75). Why not sue the State of Delaware directly for money damages? I think it is plain that Plaintiff's suit does in fact seek to invoke the *Ex parte Young* "exception."[3]

Plaintiff's argument that "the State is *not* otherwise immune from [Plaintiff's] Fifth Amendment Takings claim" is more persuasive and complex, though I think it too is ultimately unavailing. (D.I. 22 at 2). Plaintiff argues, "Delaware waived its Eleventh Amendment immunity from liability for violating the Takings Clause of the Fifth Amendment when it ratified the Bill of Rights." (*Id.* at 3). Plaintiff cites two authorities in support of his attempt to distinguish this case from *Edelman*.

---

[3] Indeed, if Plaintiff does not seek to invoke the *Ex parte Young* "exception," as Defendants rightfully point out, Plaintiff's case in federal court would be barred outright by the Eleventh Amendment. (D.I. 23 at 2).

First, Plaintiff cites to *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 347 (2023), for the proposition that sovereign immunity is waived "when a statute creates a cause of action and authorizes suit against a government on that claim." (D.I. 12 at 14-15; D.I. 20 at 3). The Supreme Court made this statement in connection with the Age Discrimination in Employment Act, the Family and Medical Leave Act, and the Indian Gaming Regulatory Act; it read into these statutes an implied abrogation of Eleventh Amendment sovereign immunity, because these statutes "authoriz[ed] suits against employers—specifically including governments—for violating the statute's provisions." *Id.* at 347-48. "[R]ecognizing immunity would have negated those authorizations: The very suits allowed against governments would automatically have been dismissed." *Id.* at 348.

The Supreme Court's reasoning is easy to follow. An explicit federal statutory authorization of suits against a state government, without a concomitant implicit abrogation of sovereign immunity of state governments permitting them to be sued in federal court for violations of that statute, would be akin to "authoriz[ing] a suit against a sovereign with one hand, only to bar it with the other." *Id.* That reasoning does not apply to this case. The Takings Clause to the Fifth Amendment is clearly different from the federal statutes considered in *Fin. Oversight.* First, the Takings Clause is not a statute. Second, it is unclear whether a plaintiff may even sue directly under the Takings Clause for relief; the Takings Clause, unlike the statutes mentioned in *Fin. Oversight*, does not, by its plain text, explicitly authorize a direct cause of action by a plaintiff against a state. The most recent Supreme Court case to address this issue, *DeVillier v. Texas*, did not arrive at a definitive answer. *See DeVillier v. Texas*, 601 U.S. 285, 288 (2024).

Plaintiff cites a recent ruling from the Eleventh Circuit that, if persuasive, would be helpful to Plaintiff's case. *Fulton v. Fulton Cnty.*, 148 F.4th 1224 (11th Cir. 2025).[4] I am not bound by *Fulton.* I will follow its holdings only insofar as I find them persuasive and applicable to Plaintiff's case. *Fulton* is readily distinguishable from the pleaded facts of Plaintiff's case.

The *Fulton* plaintiff sued Fulton County, a political subdivision of Georgia, seeking just compensation for horses that Fulton County officials had confiscated from him and refused to return. *Id.* at 1233. The question before the Eleventh Circuit was whether "the Takings Clause create[d] a direct cause of action" enabling Fulton to sue Fulton County. *Id.* at 1235. The Eleventh Circuit held that it did. The Eleventh Circuit first decided that there was not an adequate remedy under state law that would have allowed Fulton to have brought his claim, noting, "We might avoid the [direct cause of action] issue if we can remand the case to allow Fulton to press an action under *state law* to recover the value of his horses." *Id.* The Eleventh Circuit noted that the Supreme Court stated in *DeVillier* that "constitutional concerns do not arise when property owners have other ways to seek just compensation, including state-law vehicles." *Id.* at 1259 (quoting *DeVillier*, 601 U.S. at 292) (cleaned up). Thus, only after the Eleventh Circuit held that Georgia law barred Fulton's state law claim for just compensation did the court subsequently move to determine whether Fulton could "proceed directly under the federal Constitution['s]" Takings Clause. *Fulton*, 148 F.4th at 1236.

To answer this question, the Eleventh Circuit set forth its detailed research into the history of the Takings Clause (*see id.* 1238-55) before stating that "history supports the conclusion that a federal cause of action for damages exists directly under the Takings Clause."

---

[4] I note that Plaintiff identified this case even before my oral order seeking additional briefing on this matter. (D.I. 15).

*Id.* at 1255. It then ruled that sovereign immunity did not bar the action, although it did note the following:

> And even if we were to agree with the Dissent that sovereign immunity generally bars takings causes of actions—as should be clear by now, we don't—immunity has no place here. Fulton seeks to sue a local government. And "[u]nder the traditional Eleventh Amendment paradigm . . . . counties and similar municipal corporations are not" entitled to sovereign immunity. *United States ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 601 (11th Cir. 2014).[5] So Fulton County has no sovereign immunity, and the doctrine poses no bar to relief in this suit.

*Fulton*, 148 F.4th at 1262 (footnote added).

As such, the Eleventh Circuit permitted Fulton to bring an action directly under the Takings Clause against Fulton County seeking just compensation for his confiscated horses. Plaintiff now asks that I follow *Fulton* and find that "the Takings Clause is a self-executing waiver of immunity by every state—including Delaware—when they ratified the U.S. Constitution and the Bill of Rights." (D.I. 22 at 4). I decline to go so far.

As a preliminary matter, I note that *Fulton* was a 2-1 decision. The dissent presents an argument as to why the history of the Takings Clause does not support a finding that it created an implied direct cause of action. *See Fulton*, 148 F.4th at 1274-78. I do not know whether the majority or the dissent has the better of the argument. Thankfully, I need not wade into this debate, as there are other good reasons why *Fulton*, even if it were binding on me, would not apply to Plaintiff's case.

The Eleventh Circuit in *Fulton* only implied a cause of action directly under the Takings Clause, because no adequate remedy under state law existed. "*Because no other constitutionally adequate remedy for takings of personal property by local governments exists here*, we hold that

---

[5] "[The Supreme Court has] held that the Eleventh Amendment does not apply to counties and similar municipal corporations." *Pennhurst*, 465 U.S. at 123 n. 34 (1984) (citations omitted).

10

the Takings Clause directly provides for judicial relief." *Id.* at 1261 (emphasis added). In so doing, the Eleventh Circuit followed the rationale of the Supreme Court in *DeVillier*, which stated that "constitutional concerns do not arise when property owners have other ways to seek just compensation." *DeVillier*, 601 U.S. at 292. The Supreme Court thus declined to rule as to whether a direct cause of action existed under the Fifth Amendment, given that "Texas state law provide[d] a cause of action by which property owners [might] seek just compensation against the State." *Id.* at 293. The Court couched this rationale in federalism concerns, noting, "Our constitutional system assigns to state officers a coordinate responsibility to enforce the Constitution according to their regular modes of procedure. It therefore looks to the good faith of the States [and] . . . [w]e should not assume the States will refuse to honor the Constitution, including the Takings Clause, because States and their officers are also bound by obligations imposed by the Constitution." *Id.* at 292-93 (cleaned up).

*Fulton* is the case that Plaintiff has twice identified (*see* D.I. 15, D.I. 22) as being his best response to the Eleventh Amendment's and *Edelman*'s bar on the ability of federal courts to issue retroactive relief against states. *Fulton* will, as a threshold matter, only be helpful to Plaintiff if Plaintiff could make some sort of an initial showing that there is *no* state law cause of action in Delaware that would protect Plaintiff's rights under the Takings Clause. After construing Plaintiff's complaint in the light most favorable to Plaintiff, I think it is clear that Plaintiff has not made this showing. Plaintiff not only seeks declaratory and prospective injunctive relief under the Takings Clause of the United States Constitution (D.I. 1 at ¶¶ 71-75); Plaintiff also seeks declaratory and injunctive relief under Article I, Section 8 of the Delaware Constitution. (*Id.* at ¶¶ 76-80).

11

The relevant portion of Article I, Section 8 of the Delaware Constitution reads, "[N]or shall any person's property be taken or applied to public use without the consent of the person's representatives, and without compensation being made." Del. Const. art. I § 8. The briefing by Plaintiff and Defendants both seem to suggest that Plaintiff would have a viable claim for just compensation under the Delaware Constitution. Defendants note in their opening brief, "The Fifth Amendment and Article I, Section 8 of the State's Constitution have substantially identical protections." (D.I. 8 at n. 1). Defendants cite *New Castle Cnty. Sch. Dist. v. State*, 424 A.2d 15, 17 (1980); there, the Delaware Supreme Court held that Delaware "courts have generally proceeded on the basis that the constitutional guarantees here involved [i.e., the Federal and State constitutions] provide the same degree of protection against governmental takings of property without just compensation. Thus . . . the federal and the State law questions are essentially one and the same and will be treated as such herein." (citation omitted). Plaintiff does not challenge this assertion in his answering brief. If anything, Plaintiff appears to agree with Defendants that Article I, Section 8 of the Delaware Constitution requires the same just compensation from Delaware as does the Takings Clause: "[W]henever [Delaware] uses private property for a public purpose[,] the Fifth Amendment and art. I, § 8 of the Delaware Constitution mandate that the State must pay just compensation for that taking." (D.I. 12 at 11 n. 4).

Plaintiff and Defendants appear to agree that Plaintiff has a state law cause of action. As Plaintiff notes, "Delaware's Takings clause, art. I, § 8 of [the] Delaware Constitution, is a self-executing waiver of sovereign immunity." (D.I. 12 at 15). Plaintiff cites several Delaware cases in support of this proposition, among which is *State ex rel. Smith v. 0.24148, 0.23831 and 0.12277 Acres of Land*, 53 Del. 439 (1961). In this case, the Delaware Supreme Court held, "It seems well settled that [Article I, Section 8 of the Delaware Constitution is a] self-executing

12

waiver[] on the part of the State of its sovereign immunity. Consequently, where there is a taking

of property for public use . . ., the filing of a[n] . . . action for damages against the State by the

[owner] as a matter of law has been consented to by the State." *Id.* at 445. Defendants agree:

"Article I, Section 8 of the Delaware Constitution is a self-executing waiver of sovereign

immunity." (D.I. 14 at 9). Defendants also cite to a series of cases demonstrating that Delaware

courts "certainly remain open to potentially adjudicate Takings claims." (*Id.* at 7-8) (citing

*Brandywine Transmission Servs., Inc. v. Justice*, 1991 WL 35695, at *1 (Del. Super. Mar. 7,

1991); *In re 244.5 Acres of Land*, 2000 WL 303345, at *2 (Del. Super. Feb. 10, 2000); *Lawson v.

State Dep't of Transp.*, 2014 WL 3530835, at *1 (Del. Super. July 14, 2014)).[6]

    As Plaintiff himself points out, this is all that is required under Third Circuit law. Plaintiff

cites twice to *In re Venoco LLC*, 998 F.3d 94, 110 (3d Cir. 2021) (*see* D.I. 12 at 15; D.I. 22 at 4),

and in particular to the following passage, "The Supreme Court recognizes that the Takings

Clause of the Fifth Amendment is self-executing without statutory recognition, so states must

provide a specific remedy for takings *in their own courts*." (cleaned up) (emphasis added). As I

just noted, Plaintiff and Defendants agree that Delaware does in fact provide remedies in

Delaware's own courts that would protect individuals' rights under the Takings Clause of the

United States Constitution. As such, *Fulton*, even if correctly decided, would not apply.

    There is one additional reason why the Eleventh Circuit's decision in *Fulton* lacks

persuasive value on the issue before me. It is not an Eleventh Amendment case. *See Fulton*, 148

F.4th at 1262. Fulton County is a municipal government. The Supreme Court has long held "that

---

[6] This line of cases also puts paid to Plaintiff's assertion that refusing to allow this suit to proceed
in federal court "would leave private citizens whose property has been used by the government
for public purposes—like [Plaintiff]—and whose constitutional right to just compensation is
denied without any legal remedy." (D.I. 12 at 15). Not so. Plaintiff may bring his claims in state
court.

the Eleventh Amendment does not apply to counties and similar municipal corporations." *Pennhurst*, 465 U.S. at 123 n. 34 (citation omitted). The Eleventh Amendment is irrelevant to suits against municipalities. Were there any pertinent discussions of the Eleventh Amendment in *Fulton*, they would be dicta. *See In re Friedman's Inc.*, 738 F.3d 547, 552 (3d Cir. 2013).

Thus, even the most expansive possible reading of *Fulton* would not support Plaintiff's argument. Plaintiff is not suing New Castle County or the City of Wilmington or their officials; Plaintiff is suing officials of the State of Delaware. And, as Plaintiff himself notes, the State has already paid $135 to Plaintiff, which "represented the entire principal amount of Plaintiff's unclaimed property in Delaware's possession." (D.I. 1 at ¶ 56). I think that Plaintiff's request that I enter an injunction "compelling Defendants to pay [further] just compensation to the owners of the property" is thus plainly a species of retroactive relief that is foreclosed in federal court by the Eleventh Amendment and the Supreme Court's holding in *Edelman*.[7]

## B. Prospective Relief

Plaintiff requests various forms of prospective relief. For instance, Plaintiff requests that I declare the DUPL unconstitutional, that I declare that Defendants' acquisition of custody of unclaimed property is something for which the State must pay just compensation, that I "declar[e] the standard for Plaintiff and the other members of the Class for measuring the just compensation to the owner for the State's use of public purposes of the property taken," and that

---

[7] I further note that the money escheated to the state under the DUPL is paid into the State's General Fund. (D.I. 1 at ¶ 57). Allowing Plaintiff's claims to proceed would strike me as closely resembling the sort of "money judgment payable out of the state treasury" that the Court cautioned against in *Edelman*, 415 U.S. at 666. At least one other court in the Third Circuit has reached a similar conclusion on a similar set of facts. *See Vial v. Muoio*, 2026 WL 100511, at *13 (D.N.J. Jan. 12, 2026), *appeal docketed*, No. 26-1301 (3d Cir. Feb. 12, 2026). ("Because Plaintiff has already received the value of [the escheated property], his requests for further monetary relief . . . are barred by the Eleventh Amendment.").

14

I declare that Defendants must pay just compensation according to that standard and issue an injunction ensuring that the State complies with said standard. (D.I. 1 at ¶¶ B-C, E-F).

These forms of requested relief strike me as more akin to the prospective relief authorized by *Ex parte Young*.[8] Nevertheless, I do not think I can exercise subject matter jurisdiction over these claims, because Plaintiff lacks standing to seek this requested relief. To show standing, Plaintiff "must have suffered an injury in fact—a concrete and imminent harm to a legally protected interest, like property or money—that is fairly traceable to the challenged conduct and likely to be redressed by the lawsuit." *Biden v. Nebraska*, 600 U.S. 477, 489 (2023). "[W]hen a plaintiff seeks *prospective* (forward-looking) relief in the form of an injunction or declaratory judgment, they must show that they are likely to suffer *future* injury." *Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 318 (3d Cir. 2022) (citation omitted). "The future injury must also be 'imminent,' meaning that it is 'certainly impending' rather than just merely 'possible.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Plaintiff argues that he enjoys Article III standing because (1) Defendants "continue to deprive [Plaintiff] of his duly-owed just compensation, giving him a present and ongoing interest in protecting his rights," and (2) "[Plaintiff] is a Delaware resident and continues to be at risk of having other unclaimed property taken by the State of Delaware and used for public purposes without paying him just compensation for the taking, giving him a continuing interest in preventing future denials of his constitutional right to just compensation." (D.I. 12 at 16-17).

---

[8] I construe Plaintiff's request that I declare that Defendants must pay just compensation according to a given standard and issue an injunction ensuring that the State complies with said standard as applying only prospectively. If Plaintiff wanted me to apply this standard retroactively to property that had already been escheated, it would be barred by the Eleventh Amendment and *Edelman* for the reasons I have already noted.

Plaintiff's first argument is unavailing. I reiterate that the State has already paid Plaintiff $135, which "represented the entire principal amount of Plaintiff's unclaimed property in Delaware's possession." (D.I. 1 at ¶ 56). As I noted in the previous section, any money Plaintiff seeks as further "duly-owed just compensation" would fall outside the judicial powers of a federal court, as barred by the Eleventh Amendment. Thus, I cannot, issue "a declaration compelling Defendants to pay just compensation to the owners of unclaimed property," if this "just compensation" is defined as something beyond the principal of money escheated to the state. (D.I. 12 at 17-18). As such, even if Defendants were in fact continuing unlawfully to deprive Plaintiff of his property, this ongoing deprivation would not be judicially redressable by a federal court. (*Id.* at 16).

Plaintiff's second argument is similarly unavailing. Plaintiff argues that he has standing because he "is exposed to a risk of the *same* unlawful conduct in the future." (*Id.* at 18). In support of this argument, Plaintiff cites *Reading v. N. Hanover Twp., New Jersey*, 124 F.4th 189, 196-97 (3d Cir. 2024), where the Third Circuit held, "Evidence of past exposure to illegal conduct does not automatically justify an injunction against future violations, but it is relevant as a launching pad for a showing of imminent future injury." (cleaned up). Yet this very case notes that when "the plaintiff seeks prospective relief to address future harm, she must show that the threatened injury is *certainly impending*, or there is a *substantial risk* that the harm will occur." *Id.* at 196 (emphasis added) (citation omitted). Plaintiff has pleaded no facts that would support such a showing. The only potentially relevant statement in Plaintiff's various filings would be his bare assertion in his answering brief that "[Plaintiff] is a Delaware resident and continues to be at risk of having other unclaimed property taken by the State of Delaware." (D.I. 12 at 16).

16

If, on the strength of that argument, I were to find that Plaintiff had standing to sue for prospective relief and declaratory judgment, it would follow that every single one of Delaware's over one million residents should also enjoy such standing to challenge the DUPL. Such a curious result would run cleanly afoul of the Court's holding in *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992), "We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."

I will not go so far. And, at any rate, Plaintiff fails, in his answering brief, to point to paragraphs in his complaint that would show that Plaintiff would in fact be subject to a "certainly impending" or "substantial risk" of suffering further escheat. "[P]laintiffs bear the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of [future] harm." *Clapper*, 568 U.S. at 414 n. 5. Plaintiff has not carried this burden in his pleadings, and as such, Plaintiff cannot establish standing with respect to the various prospective forms of relief he seeks.

The Third Circuit has held that a dismissal for lack of subject matter jurisdiction is not an adjudication on the merits and should thus be without prejudice. *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999).[9] Thus, since I do not have subject matter jurisdiction, I dismiss Plaintiff's complaint without prejudice.

---

[9] Plaintiff makes much of the fact that the Third Circuit ordered that the prior incarnation of this case be dismissed without prejudice. For instance, in his most recent briefing, Plaintiff states that, had the Third Circuit thought this case meritless, "it would have affirmed the dismissal of the prior action with prejudice. It would not have wasted the parties' or this Court's resources by requiring [Plaintiff] to claim his abandoned property only to later assert what would have been a

## IV.    CONCLUSION

An appropriate order will issue.

---

meritless claim." (D.I. 24 at 2). (*See also* D.I. 22 at 6, D.I. 12 at 12). Plaintiff is just wrong. When there is no subject matter jurisdiction, as the Third Circuit held, that Court should not and, in this case, did not give a hint as to its view, if it even had one, of the merits. The same reason—lack of subject matter jurisdiction—is why the Third Circuit vacated this Court's alternative holding on the merits.

18